UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

|  |  |  |
|---|---|---|
| BRETT MCKENZIE, | : | |
|  | : | |
| Plaintiff, | : | CIVIL ACTION NO. 08 CIV 3623 |
|  | : | (SAS)(JCF) |
| - against - | : | |
|  | : | |
| DOW JONES & COMPANY, INC. | : | |
|  | : | |
| Defendant. | : | |
| | : | |

───────────────────────────────

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO
DISMISS THE COMPLAINT PURSUANT TO RULE 12(B) (6)**

## Table of Contents

PRELIMINARY STATEMENT........................................................................... 1

FACTS........................................................................................................... 1

ARGUMENT .................................................................................................. 9

**I.    FIRST AMENDMENT CONSIDERATIONS SHOULD NOT INFORM THE COURT'S STANDARD OF REVIEW.** ................................................................. 9

**II.    PLAINTIFF'S CLAIM OF PRIMA FACIE TORT IS TIMELY.** ........................... 11

   a.    The Applicable Law is New York's Three-Year Statute of Limitations........................ 11

   b.    The Standard of Review for Questions Pertaining to Statute of Limitations. ............ 13

   c.    The Complaint Pleads Prima Facie Tort – Not Defamation............................................ 14

      1.    Plaintiff has Pled All of the Elements of Prima Facie Tort...................................... 14

      2.    Plaintiff's Claim Could Not Have Been Pled in the Alternative as Libel.............. 15

**III.    THE COMPLAINT PROPERLY STATES A CAUSE OF ACTION FOR PRIMA FACIE TORT.** ........................................................................................................ 16

   a.    That Defendant was Solely Motivated By Disinterested Malevolence is Amply Pled in the Complaint, Such that it Can Not be Resolved on a Motion to Dismiss at the Pleading Stage. ................................................................................................................ 17

      1.    Evidence of Disinterested Malevolence:  Dorothy Rabinowitz's Statement. ......... 18

      2.    Evidence of Disinterested Malevolence: Defendant's Failure to Engage in Balanced Reporting. ................................................................................................... 19

      3.    Evidence of Disinterested Malevolence:  Defendant's Disregard For Journalism Ethics 21

      4.    Defendant Had No Valid Reason to Name Brett McKenzie in the Article............. 22

   b.    Complaint Amply Pleads Special Damages. ................................................................. 24

CONCLUSION.............................................................................................................. 27

## CASES

*Advance Music Corp. v. American Tobacco Co.*, 296 N.Y. 79 (1946) .......................................... 17

*Aikens v. Wisconsin*, 195 U.S. 194, 204, 25 S.Ct. 3, 5 (1904) ........................................ 11

*ATI, Inc. v. Ruder & Finn*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864 (1977) ................................. 12

*Bassim v. Hassett,* 184 A.D.2d 908, 909, 585 N.Y.S.2d 566, 567-68 (3d Dep't 1992) ............... 12

*Belsky v. Lowenthal*, 62 A.D.2d 319, 323, 405 N.Y.S.2d 62 (1st Dep't 1878), *affd.* 47 N.Y.2d

   820, 418 N.Y.S.2d 573 (1979) .............................................................................. 11

*Besicorp Ltd. v. Kahn*, 290 A.D.2d 147, 150, 736 N.Y.S.2d 708, 711 (3rd Dept. 2002) ............ 11

*Board of Educ. v. Farmingdale Classroom Teachers Assn.*, 38 N.Y.2d 397, 406, 380 N.Y.S.2d

   635(1975) .................................................................................................. 14

*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712

   (1983) ............................................................................................. 12, 14, 17

*Cerasani v. Sony Corp.,* 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998) .......................................... 9

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), cert. denied, 503 U.S.

   960, 112 S.Ct. 1561 (1992) ............................................................... 2, 4, 6, 9, 22, 26

*Golub v. Esquire Pub, Inc.*, 124 A.D.2d 528, 508 N.Y.S.2d 188 (1st Dep't 1986) ...................... 14

*Havell v. Islam*, 292 A.D.2d 210, 739 N.Y.S.2d 371 (1st Dept. 2002)......................................... 12

*Holy Spirit Ass'n for Unification of World Christianity v. New York State Congress of Parents

   and Teachers, Inc.*, 95 Misc. 2d 548, 408 N.Y.S.2d 261 (Sup. Ct., N.Y. Cty. 1978)............... 15

*Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638 (1975) ....................................................... 26

*Kartiganer Assocs., P. C. v. Town of Newburgh*, 57 A.D.2d 857, 858, 394 N.Y.S.2d 262, 263 (2d

   Dep't 1977) ................................................................................................ 16

*Korry v. International Telephone & Telegraph Corp.*, 444 F.Supp. 193, 197 (S.D.N.Y.1978) ... 25

*KSL Recreation Com. v. Boca Raton Hotel and Club Ltd. Partnership*, 168 Misc.2d 18, 25, 637

    N.Y.S.2d 261, 265 (Sup. Ct. NY Cty. 1995) .......................................................................... 24

*Marine Midland Bank v. Renck*, 208 A.D.2d 688, 617 N.Y.S.2d 507 (2d Dep't 1994) ............... 11

*Montefusco v. Nassau County*, 39 F.Supp.2d 231 (E.D.N.Y 1999) ........................................ 12, 25

*Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868, 875 (S.D.N.Y. 1984) ........................ 25

*Ruza v. Ruza*, 286 A.D. 767, 146 N.Y.S.2d 808 (1955) ................................................................ 12

*Sheppard v. Coopers, Inc.*, 13 Misc.2d 862, 865, 156 N.Y.S. 2d 391,395 (NY Sup., NY Co.

    1956) .................................................................................................................................... 17

*Stacom v. Wunsch*, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991) ...................................... 11

*Swisher Intern., Inc. v. U.S.*, 27 F. Supp. 2d 234 (Ct. Int'l Trade 1998), rev'd on other grounds,

    205 F.3d 1358 (Fed. Cir. 2000), reh'g and suggestion for reh'g en banc denied (2000) ........... 14

*Tighe v. Ginsberg*, 146 A.D.2d 268, 540 N.Y.S.2d 99 (4th Dept. 1989) ...................................... 25

*Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) ......................... 17

*Yurman Design Inc. v. Chaindom Enters., Inc.,* 2000 WL 897141, at 4 (S.D.N.Y. 2000). ............ 9

## RULES

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................................................ 1, 9

New York Civil Practice Law and Rules (CPLR) § 214(5) ........................................ 11, 12, 14, 16

New York Civil Practice Law and Rules (CPLR) § 215(3) .................................................... 11, 14

## TREATISES

51 Am. Jur. 2d Limitation of Actions § 52 .................................................................................. 13

NYPRAC-TORTS § 1:98 ............................................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiff Brett McKenzie ("Plaintiff"), by his attorney respectfully submits this memorandum of law in opposition to the motion of defendant Dow Jones & Co., Inc. ("Defendant") to dismiss the complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## FACTS

In 1983, Plaintiff Brett McKenzie, at age 12, was sexually molested by a Roman Catholic priest.  Comp., ¶2.

Twenty years later, in 2003, Brett McKenzie joined a class action against the Roman Catholic Diocese of Manchester, N.H.  As a result, in November 2003, Plaintiff entered into a confidential settlement agreement with the Diocese of Manchester.  Brett received only $20,000. Comp., ¶3.

Two years later, on April 27, 2005, Brett McKenzie was attacked again, this time by The Wall Street Journal, in an article written by Dorothy Rabinowitz (the "Article").  In the Article, The Wall Street Journal, which is owned by Defendant, identified Brett McKenzie as an individual who had claimed to be sexually abused by a priest for the purpose of extracting a monetary settlement from the Diocese of Manchester.  Comp., ¶4.

The Article revealed for the first time Brett's closely guarded secret that as a child he had been sexually abused by a priest.  Comp., ¶6

The Article, a copy of which is attached as Exhibit "A" to the Complaint, began with the following tale about the priest who sexually abused Brett McKenzie:

> Nine years after he had been convicted and sent to prison on
> charges of sexual assault against a teenage boy, Father Gordon

1

MacRae received a letter in July 2003 from Nixon Peabody LLP, a law firm representing the Diocese of Manchester, N.H. Under the circumstances — he was a priest serving a life term -- and after all he had seen, the cordial-sounding inquiry should not perhaps have chilled him as much as it did.

"…an individual named Brett McKenzie has brought a claim against the Diocese of Manchester seeking a financial settlement as a result of alleged conduct by you," the letter informed him. There was a limited window of opportunity for an agreement that would release him and the Diocese from liability. He should understand, the lawyer added, that this request didn't require Fr. MacRae to acknowledge in any way what Mr. McKenzie had alleged. "Rather, I simply need to know whether you would object to a settlement agreement."

Fr. MacRae promptly fired a letter off through his lawyer, declaring he had no idea who Mr. McKenzie was, had never met him, and he was confounded by the request that he assent to any such payment. Neither he nor his lawyers ever received any response. Fr. MacRae had little doubt that the stranger -- like others who had emerged, long after trial, with allegations and attorneys, and, frequently just-recovered memories of abuse -- got his settlement.

Comp., ¶16.[1]

For over 20 years Brett McKenzie kept MacRae's sexual abuse of him a secret. Brett McKenzie held onto his secret because he wanted to avoid embarrassment, humiliation, pity, contempt and ridicule from his friends and coworkers and he wanted to protect his parents from feeling as if they had failed to protect him as a child. Comp., ¶41.

The Diocese of Manchester understood the injury that public disclosure of Brett McKenzie's victimization would cause to him. So the Diocese, in settling Brett McKenzie's

---

[1] Plaintiff relied upon The Wall Street Journal's Article in framing the Complaint herein. Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561 (1992).

claim, agreed to enter into a confidentiality agreement with him, which allowed only Brett

McKenzie to control disclosure of the abuse he had suffered.  Comp., ¶42.

In fact, the settlement agreement between Brett McKenzie and the Diocese of Manchester

utilized confidentiality language that was specifically approved by the U.S. Conference of

Bishops for inclusion in clergy abuse settlements. The US Conference of Bishops has explained

that its confidentiality language is required for "grave and substantial reasons," and is intended

specifically for the purpose of avoiding "the emotional harm that would result from such

disclosure" of the identity of clergy abuse victims.[2]  Comp., ¶43. The Settlement Agreement and

General Release entered into between Brett McKenzie and the Diocese of Manchester is annexed

as Exhibit A to the Declaration of Richard M. Mortner, dated June 6, 2008, and submitted

herewith in opposition to Defendant's Motion to Dismiss (the "Mortner Declaration").[3]

---

[2] The confidentiality section of the Settlement Agreement and General Release entered into between Brett McKenzie and the Diocese of Manchester states as follows:

> 3.    For grave and substantial reasons, including but not limited to, the emotional harm that would result from such disclosure, Brett McKenzie has requested, and the Releasees have agreed, that they and their agents, including counsel, will not, at any time, directly or indirectly, publicize, divulge, discuss or disclose the name of Brett McKenzie nor the settlement amount specifically paid to Brett McKenzie, it being understood that settlement amounts and ranges may be disclosed without attribution to Brett McKenzie. The Releasees or their agents may disclose such terms to their legal advisors, insurers, and/or accountants as may be necessary to receive professional advice and then only if such persons are expressly made aware of this confidentiality provision and agree in writing to be bound hereby, and except as otherwise compelled by final, non-appealable order from a court of competent jurisdiction. (See Exhibit A of the Mortner Declaration.)

[3] Plaintiff quoted from and relied upon the Settlement Agreement and General Release entered into between Brett McKenzie and the Diocese of Manchester in framing the Complaint herein. See the Mortner Declaration at ¶¶3 and 4.  Therefore, in connection with the instant 12(b)(6)

By allowing only victims like Brett McKenzie to disclose their abuse, the U.S. Conference of Bishops and the Diocese of Manchester expressly recognized that disclosure against the private wishes of the victim was inherently injurious to the victim and would impede the victim's recovery.  Comp., ¶44.

The Wall Street Journal's article in its opening paragraphs singled out only one of more than two hundred individuals who claimed to have been child victims of sexual abuse by priests of the Diocese of Manchester and who had entered into confidential settlement agreements with the Diocese – that victim was Brett McKenzie.  Comp., ¶26.

Moreover, The Wall Street Journal's article identified only one source for its public "outing" of Brett McKenzie, Gordon MacRae, a convicted, pedophile priest who was serving a prison term of 33½ to 67 years.  Comp., ¶27.

In March of 2003, New Hampshire's Office of the Attorney General issued a comprehensive report summarizing a year-long investigation of clergy sexual abuse cases involving the Diocese of Manchester.  Those cases involved 40 priests.  In that report Gordon MacRae was specifically identified by the New Hampshire's Office of the Attorney General as one of the worst of the worst among priests who had, over the years, sexually molested minors. Comp., ¶28.  The section concerning Gordon MacRae in the Report of New Hampshire's Office of the Attorney General is annexed as Exhibit B to the Mortner Declaration.[4]

_____

motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

[4] Plaintiff relied upon the Report of New Hampshire's Office of the Attorney General in framing the Complaint herein.  See the Mortner Declaration at ¶¶5 and 6.  Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

Nevertheless, The Wall Street Journal's article accepted MacRae's tale as uncontroverted. Neither Rabinowitz nor anyone else from The Wall Street Journal ever contacted the Diocese of Manchester or its attorneys, or Brett McKenzie or his attorney in order to fact check MacRae's claim that he never met Brett McKenzie. Comp., ¶29.

Neither Rabinowitz nor anyone else from The Wall Street Journal ever asked for comment from the Diocese of Manchester, its attorney, Brett McKenzie, or his attorney on MacRae's claim that he never met Brett McKenzie. Comp., ¶30.

Had Defendant undertaken any of the aforementioned basic investigative steps regarding MacRae's statement, it would have found that in 1983, a 12 year-old Brett McKenzie was a student at the Sacred Heart School in the Parish of Our Lady of Miraculous Medals in Hampton, N.H., where, at that time Gordon MacRae was a young priest, and a teacher of Brett McKenzie's. Comp., ¶31.

Had Defendant undertaken any of the aforementioned basic investigative steps, it would have been told that there was significant evidence that MacRae sexually abused Brett McKenzie, that Brett McKenzie's claims were meritorious, that MacRae had consistently denied any and all of the many allegations of sexual abuse against him spanning decades, and that MacRae's claim of innocence in connection with Brett McKenzie's claim was utterly without merit. Comp., ¶32.

The confidentiality agreements employed by the Diocese of Manchester for victims like Brett McKenzie were well known to Defendant. Comp., ¶49.

Nevertheless, upon information and belief, Rabinowitz encouraged MacRae to identify victims for The Wall Street Journal's Article, which resulted in MacRae revealing Brett McKenzie's name to Rabinowitz. Comp., ¶50.

Notwithstanding the need for confidentiality in sex crimes, Defendant reported the fact that Brett McKenzie had been sexually abused by a priest as a child.  The Wall Street Journal reported Brett McKenzie's name based on nothing more than Gordon MacRae's seemingly random selection of Brett McKenzie out of dozens of claimants against him.  Comp., ¶45.

On April 29, 2005, two days after publication of The Wall Street Journal's Article, The New Hampshire Union Leader, a newspaper published and widely circulated in New Hampshire, wrote an article about The Wall Street Journal's article. The New Hampshire Union Leader article reported,

> Rabinowitz yesterday defended the Journal's naming of one of MacRae's accusers in the civil class-action lawsuit.  'I'll tell you why because the cloak of anonymity is the worst encouragement to a false abuse climate; that is the problem.'

See Comp., ¶17.  A copy of The New Hampshire Union Leader's article is annexed as Exhibit C to the Mortner Declaration.[5]

Thus, Dorothy Rabinowitz, a member of the editorial board of The Wall Street Journal, explained why the Wall Street Journal "ousted" Brett McKenzie.  Comp., ¶18.

Defendant knew that the article and matters contained therein concerning Plaintiff were confidential and highly sensitive. Yet, Defendant published the Article with wanton disregard for

---

[5] Plaintiff quoted from and relied upon The New Hampshire Union Leader's article in framing the Complaint herein.  See the Mortner Declaration at ¶¶7 and 8.  Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

the ethical standards that prevail in the news media regarding the identification of victims of crimes and sexual abuse.[6]  Comp., ¶53.

Based on the foregoing Plaintiff has alleged that Defendant was motivated by malice in its decision to report Brett McKenzie's name.  Comp., ¶53.

Plaintiff has alleged that based upon all of the foregoing, Defendant intended to cause harm to Brett McKenzie out of disinterested malevolence.  The complained of acts of Defendant were without justification.  Comp., ¶54.

Plaintiff has also alleged that no aspect of pecuniary self interest or public interest was served by revealing Brett McKenzie's name as a victim or alleged victim of child sexual abuse by a priest.  The complained of acts of Defendant were done by Defendant solely for the purpose of causing harm to Plaintiff.  Comp., ¶55.

### Plaintiff's Special Damages

The Complaint alleges Plaintiff suffers from mental and physical disorders as a result of the severe mental pain and anguish caused by Defendant's conduct.  These injuries form the basis of Plaintiff's claim for special damages.  Comp., ¶59.

This severe mental pain and anguish was magnified by the shocking implication to most readers that Plaintiff fabricated a claim of sexual abuse against the Diocese of Manchester and against a priest.  Comp., ¶60.

---

[6] The New Hampshire Union Leader chose not to report Brett McKenzie's name in its article, stating:  "New Hampshire Union Leader policy is not to report the names of victims of sexual abuse."  See Exhibit B of the Mortner Declaration.

7

This severe mental pain and anguish was also magnified by the shocking disclosure to Plaintiff's friends and family that Plaintiff had been sexually abused as a child by a priest. Comp., ¶61.

Also as a result of the aforesaid deliberate conduct of Defendant, Plaintiff began to suffer from anxiety related disorders.  Plaintiff was made sick, nervous and unable to properly eat and digest his food, and he had problems with his weight, suffered from vomiting, insomnia and depression and became despondent.    Comp., ¶62.

These disorders were magnified by Plaintiff's sudden public infamy, which resulted from The Wall Street Journal's article.  Comp., ¶63.

These disorders were also magnified by the shocking disclosure to Plaintiff's friends and family of Plaintiff's secret childhood experience of sexual abuse by a priest.  Comp., ¶64.

Consequently, Plaintiff was compelled to obtain medical aid in an endeavor to restore his physical and mental health.  Plaintiff saw a doctor and the doctor prescribed medications for Plaintiff and recommended further treatment.  Comp., ¶65.

As a result, Plaintiff incurred medical bills.  Comp., ¶66.

Plaintiff still suffers from the same psychological and physical injuries; and Plaintiff is informed and believes that by reason of his injuries Plaintiff will continue to suffer the same psychological and physical injuries for a period of time to come, to Plaintiff's further damage. Comp., ¶68.

The medical records for Brett McKenzie from his primary treating physician at Family Care of Farmington, NH are annexed to the Mortner Declaration as Exhibit D.  These medical

records evidence the foregoing allegations of special damages that resulted from Defendant's

conduct.[7]


## ARGUMENT


### I.    FIRST AMENDMENT CONSIDERATIONS SHOULD NOT INFORM THE COURT'S STANDARD OF REVIEW.

As Defendant acknowledges in its Memorandum of Law, to survive a motion to dismiss

for failure to state a claim, pursuant to Rule 12(b)(6), "the complaint must contain allegations

concerning each of the material elements necessary to sustain recovery under a viable legal

theory." *Yurman Design Inc. v. Chaindom Enters., Inc.,* 2000 WL 897141, at 4 (S.D.N.Y. 2000).

Furthermore, the court "must accept the factual allegations set forth in the complaint as true, and

draw all reasonable inferences in favor of the Plaintiff." *Cerasani v. Sony Corp.,* 991 F. Supp.

343, 350, 357 (S.D.N.Y. 1998).  See Defendant's Memorandum, Page 3.

However, Defendant is wrong in its assertion that the Court should undertake a further

consideration here based on the holding in *Church of Scientology, Int'l v. Time Warner, Inc.,* 903

F. Supp. 637 (S.D.N.Y. 1995).  In *Church of Scientology* this Court noted that "debate on public

issues should be uninhibited, robust, and wide-open and that it may well include vehement,

caustic, and sometimes sharp attacks." *Id.* 640-641.

Here, Defendant's Article was attacking the policy of the New Hampshire legal system

and the Diocese of Manchester to employ confidentiality in settling claims of clergy sexual

---

[7] Plaintiff relied upon Brett McKenzie's medical records from Family Care of Farmington, NH in framing the Complaint herein.  See the Mortner Declaration at ¶¶9 and 10.  Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

abuse. Plaintiff Brett McKenzie was only one of about two hundred beneficiaries of that policy. The intent of Defendant's Article was not an attack against Plaintiff or a debate concerning his particular claim. Indeed, Defendant's words as regards Plaintiff were neither vehement nor caustic. Rather, Defendant only stated the truth regarding Plaintiff, *i.e.*, that "an individual named Brett McKenzie has brought a claim against the Diocese of Manchester seeking a financial settlement as a result of alleged conduct by [Father Gordon MacRae]."

The public issue debated in Defendant's Article is captured in the following passage from the Article:

> That the scandals which began reaching flood tide in the late '90s had to do with charges all too amply documented, and that involved true predators, no one would dispute. Nor can there be much doubt that those scandals, their non-stop press coverage, and the irresistible pressure on the Church to show proof of cleansing resulted in a system that rewarded false claims along with the true. An expensive arrangement, that – in more ways than one. (See the Article, annexed as Exhibit A to the Complaint.)

The doctrine in *Church of Scientology* does not apply here and Defendant has mischaracterized Plaintiff's action. The gravamen of Plaintiff's Complaint is that the reporting of Brett McKenzie's name in Defendant's Article was gratuitous and irrelevant to the public debate on confidential clergy abuse settlement agreements. Rather, Defendant's naming of Brett McKenzie was solely the product of malevolent indifference, indifference to the harm that would be caused to Brett McKenzie. Accordingly, *Church of Scientology, Int'l v. Time Warner, Inc.* has no relevance to this action. The Court should confine its consideration to the factors guiding an ordinary motion to dismiss at the pleading stage.

## II.   PLAINTIFF'S CLAIM OF PRIMA FACIE TORT IS TIMELY.

### a.   The Applicable Law is New York's Three-Year Statute of Limitations.

Defendant correctly states that "this Court should apply New York's statute of limitations to Plaintiffs prima facie tort claim."  In New York the statute of limitations for prima facie tort is three years from the date of the offending act.  N.Y. C.P.L.R. 214(5); see *Marine Midland Bank v. Renck*, 208 A.D.2d 688, 617 N.Y.S.2d 507 (2d Dep't 1994); *Jones v. City of New York*, 161 A.D.2d 518, 555 N.Y.S.2d 788 (1st Dep't 1990); *Stacom v. Wunsch*, 173 A.D.2d 401, 570 N.Y.S.2d 32 (1st Dep't 1991); *Besicorp Ltd. v. Kahn*, 290 A.D.2d 147, 150, 736 N.Y.S.2d 708, 711 (3rd Dept. 2002); and NYPRAC-TORTS § 1:98.

Defendant incorrectly argues that New York has two statutory periods of limitation that both govern the cause of action of prima facie tort; a 3-year period, as per CPLR § 214(5) and a one-year period, as per CPLR § 215(3).  Defendant contends that courts must parse claims of prima facie tort based upon a grab bag of indicia that will determine which statute of limitations a court should apply.  Such a regime of confusion could not exist.

Prima facie tort is a singular and narrowly defined cause of action originally expressed by Mr. Justice Holmes; "[P]rima facie, the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the Defendant is to escape." *Aikens v. Wisconsin*, 195 U.S. 194, 204, 25 S.Ct. 3, 5 (1904).  In New York, prima facie tort is not a "'catch-all' alternative for every cause of action which cannot stand on its legs." *Belsky v. Lowenthal*, 62 A.D.2d 319, 323, 405 N.Y.S.2d 62 (1st Dep't 1878), *affd.* 47 N.Y.2d 820, 418 N.Y.S.2d 573 (1979).  Rather, the Court of Appeals has observed, "The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a

series of acts which would otherwise be lawful" *ATI, Inc. v. Ruder & Finn*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864 (1977), quoting *Ruza v. Ruza*, 286 A.D. 767, 146 N.Y.S.2d 808 (1955).

The hallmark of prima facie tort is not that a common law tort is committed, but that a lawful act is performed, which because of its malicious motive calls for legal remedy. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712 (1983). Thus, the doctrine of prima facie tort represents a distinct cause of action, not a fuzzy theory that could be governed by two different statutes of limitation.

In *Havell v. Islam*, 292 A.D.2d 210, 739 N.Y.S.2d 371 (1st Dept. 2002), the Appellate Division held one statute of limitation is applicable to prima facie tort – the three-year statute under CPLR § 214(5). The Court then explained,

> A claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitation period (*citation omitted*), and where, as here, a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, Plaintiff cannot avoid a Statute of Limitations bar by labeling the action as one to recover damages for a prima facie tort. (*Havell, supra.*)

Thus, those decisions holding a one-year limitation period applicable to claims denominated as prima facie torts, are in reality holding that such claims were not properly pled prima facie torts.

Similarly, in *Montefusco v. Nassau County*, 39 F.Supp.2d 231 (E.D.N.Y 1999), the District Court found, "The statute of limitations for *prima facie* tort is three years," citing *Bassim v. Hassett*, 184 A.D.2d 908, 909, 585 N.Y.S.2d 566, 567-68 (3d Dep't 1992). Then the Court held, "Moreover, where, as here, a plaintiff alleges *prima facie* tort in order to overcome the strictures of a less favorable statute of limitations, courts do not hesitate to dismiss the *prima facie* tort claim." *Montefusco, supra*, at 238.

Accordingly, the Court's inquiry on this 12(b)(6) motion must be whether the Complaint amply pleads the unique elements of prima facie tort. If the Complaint pleads prima facie tort

correctly, then the three-year statute, the only statute, must apply.

Defendant incorrectly contends that a consideration of the "context" of the claim is determinative of whether to employ the three-year statute or the one-year statute. Defendant states, "[T]he three year statute of limitations does *not* apply in an editorial context or where the fundamental nature of the claim is an intentional tort." See Defendant's Memorandum, p. 10. As previously noted, the correct inquiry in not context, it is whether Plaintiff has properly pled prima facie tort -- in which case the three-year statute applies.[8]

### b. The Standard of Review for Questions Pertaining to Statute of Limitations.

Courts generally resolve ambiguities in statutes of limitations in favor of sustaining the complaint or permitting the case to be resolved on its merits. 51 Am. Jur. 2d Limitation of Actions § 52. A statute of limitations must be applied in such a manner that it provides a party a full opportunity to try his or her rights in court. *Swisher Intern., Inc. v. U.S.*, 27 F. Supp. 2d 234

---

[8] Defendant cites Thomas v. Bergdorf Goodman, Inc., 03 Civ. 3066 (SAS), 2004 WL 2979960, at 12 (S.D.N.Y. Dec. 22, 2004) (Scheindlin, J.) for the proposition that this Court has ruled categorically that the one-year period of limitation should apply to prima facie tort. However, in two other cases involving prima facie tort decided by this Court, the Court gave tacit recognition to the three-year statute of limitations for prima facie tort in New York.

In Davis v. City of New York, 2000 WL 1877045 (S.D.N.Y.) (Scheindlin, J.), the Court heard a claim for prima facie tort, which arose in 1998, when Defendants confiscated plaintiff's Police Department badge and firearm and later informed him that he had constructively resigned from the Police Department for failing to decline a nomination from the Liberal Party, in violation of Section 1129 of the New York City Charter. In 2000, more than two years later, Plaintiff commenced his action. Nevertheless, the Court did not find that the plaintiff's claim for prima facie tort was time-barred. The action was dismissed because the plaintiff failed to establish that intention to harm him was the sole motive for his discharge.

In Milton v. Alvarez, (Scheindlin, J.) the plaintiff was stopped and questioned on October 5, 2001 on Columbia University's campus by a Columbia University security officer. On October 20, 2004, the Plaintiff commenced an action for, *inter alia*, false arrest and prima facie tort against Columbia University and their agents. Nevertheless, this Court did not find that the claim for prima facie tort was time-barred. Rather, the court dismissed the prima facie tort claim based upon defects in the pleading.

(Ct. Int'l Trade 1998), rev'd on other grounds, 205 F.3d 1358 (Fed. Cir. 2000), reh'g and suggestion for reh'g en banc denied (2000).

### c.  The Complaint Pleads Prima Facie Tort – Not Defamation

By distinguishing Plaintiff's prima facie tort claim from a traditional libel claim Plaintiff establishes that the three-year statute of limitations, under CPLR § 214(5), applies -- rather than the one-year period, as per CPLR § 215(3).  Showing that the Plaintiff has properly pled facie tort claim, rather than a claim for libel, can be established in two ways: (i)  Plaintiff has pled all of the elements of prima facie tort, and (ii) with the facts of this case a traditional tort could not have been pled in the alternative (*see Board of Educ. v. Farmingdale Classroom Teachers Assn.*, 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635(1975)).

#### 1.  *Plaintiff has Pled All of the Elements of Prima Facie Tort.*

The New York's Court of Appeals has stated the that the specific cause of action of prima facie tort consists of four elements: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful.  *Burns Jackson Miller Summit & Spitzer v. Lindner, supra,* 59 N.Y.2d at 332, 464 N.Y.S.2d 712.

Here, Defendant argues that two of the above four elements have not been pled; special damages, and the absence of excuse or justification. Indeed the court have found that prima facie tort is far more difficult to establish than defamation in that it requires proof of both specific intent to harm and special damages.  *Golub v. Esquire Pub, Inc.*, 124 A.D.2d 528, 508 N.Y.S.2d 188 (1st Dep't 1986).  However, here Plaintiff has met those burdens in the Complaint.

The Complaint expressly makes out each of the elements of prima facie tort as follows:

(1) Intentional infliction of harm, see the Complaint, at paragraphs 24-33, 49-51;

14

(2) Special damages, see the Complaint, at paragraphs 58-69[9];

(3) Absence of excuse or justification, see the Complaint, at paragraphs 34-39, 52-57[10]; and

(4) An act or series of acts that would otherwise be lawful, see the Complaint, at paragraphs 19-23,40-48.

### 2. *Plaintiff's Claim Could Not Have Been Pled in the Alternative as Libel.*

In an action for libel, truth is a defense, but a prima facie tort may be made out even if the statements made are truthful, if it can be shown that they were made solely out of malice and for no legitimate purpose. *Holy Spirit Ass'n for Unification of World Christianity v. New York State Congress of Parents and Teachers, Inc.*, 95 Misc. 2d 548, 408 N.Y.S.2d 261 (Sup. Ct., N.Y. Co. 1978).

Here, the Complaint does not allege that the statements in The Wall Street Journal's article are false.  In fact, Brett McKenzie did bring a claim against the Diocese of Manchester seeking a financial settlement as a result of alleged sexual abuse by Gordon MacRae.  Moreover, Plaintiff does not question the truth of the statement in the Article that MacRae denied ever having met Brett McKenzie.  Comp., ¶20.

As a result, the complained of acts of Defendant might otherwise be deemed lawful and not amenable to the application of traditional tort remedies. Thus, but for the doctrine of prima facie tort, complete relief could not be afforded to Plaintiff by. See Comp., ¶56.

Accordingly, Defendant cannot argue that Plaintiff has used prima facie tort to avoid the

---

[9] The pleading of special damages is addressed at greater length below in Section IV.

[10] The pleading of the absence of excuse or justification, *i.e.*, "malevolent indifference," is addressed at greater length below in Section III.

shorter statute of limitations applicable to a libel claim.

Finally, Defendant cites *Kartiganer Assocs., P. C. v. Town of Newburgh*, 57 A.D.2d 857, 858, 394 N.Y.S.2d 262, 263 (2d Dep't 1977) for the proposition that the one-year statute of limitations will be applied to a prima facie tort claim where "the gravamen thereof is the alleged injury to Plaintiffs reputation." (Defendant's Memorandum, p. 6.) However, this is not libel claim and ***the alleged injury is not to Plaintiff's reputation***.

Plaintiff is a truck driver for the town of Portsmouth; he is not a person who relies on his reputation in any of his fields of endeavor. Rather the Complaint alleges that Plaintiff has suffered psychological and physical injury as a result of the publication of Plaintiff's name as a claimant and alleged victim of child sexual abuse by a priest. See the Complaint, paragraphs 59-68.

Based on all of the foregoing the Court should find that the New York's three-year statute of limitations, CPLR § 214(5), applies here and that this action is timely commenced.


## III.    THE COMPLAINT PROPERLY STATES A CAUSE OF ACTION FOR PRIMA FACIE TORT.

Defendant contends that the Complaint, given every favorable inference as it must be, does not make out a claim for prima facie tort. In support of this position, Defendant relies upon two propositions: "Plaintiff cannot show that Dow Jones published the Column with the sole intent to harm Plaintiff and Plaintiff has not adequately plead special damages." (Defendant's Memorandum, p. 7)

a.  **That Defendant was Solely Motivated By Disinterested Malevolence is Amply Pled in the Complaint, Such that it Can Not be Resolved on a Motion to Dismiss at the Pleading Stage.**

The Courts of this jurisdiction have defined prima facie tort as "the intentional infliction of damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." *Sheppard v. Coopers, Inc.*, 13 Misc.2d 862, 865, 156 N.Y.S. 2d 391,395 (NY Sup., NY Co. 1956), citing *Advance Music Corp. v. American Tobacco Co.*, 296 N.Y. 79 (1946). Furthermore, the Courts have held, "When we say that the act must be "without justification" we eliminate all aspects of pecuniary self interest because the act must be intended to cause harm out of "disinterested malevolence." *Burns Jackson Miller Summit & Spitzer v. Lindner, supra,* 59 N.Y.2d at 332, 464 N.Y.S.2d 712.

Indeed, Defendant's brief correctly states that this element of a cause of action for prima facie tort requires the Complaint to plead  that "the Defendant's conduct was not only harmful, but done with the sole intent to harm…" *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).  (See Defendant's Memorandum, p. 7.)

Here, Defendant argues, "Plaintiffs prima facie tort claim fails because Dow Jones simply ***did not publish the Column*** 'without excuse or justification'…" (See Defendant's Memorandum, p. 8) (Emphasis supplied).  However, Defendant has framed the question to determine outcome.  Of course, in publishing the whole Column, Defendant may have had a valid intent to inform, ***but the whole Column is not the conduct complained of by Plaintiff***.

Plaintiff does not does not claim the Column was wrongful.  The conduct for which Defendant is liable is ***reporting Plaintiff's name in the Column***.

Accordingly, the Complaint alleges,

> In ***publishing Brett McKenzie's name*** in connection with being a victim of priest sexual abuse, Defendant acted with intent and in a grossly

17

irresponsible manner.  Moreover, Defendant acted with intent and without due consideration for the ethical principles and standards as regards ***the publication of the names of victims of crimes and of victims sexual abuse*** that are ordinarily followed by responsible members of the news media and parties engaged in information gathering and dissemination. (Complaint, ¶51) (Emphasis supplied.)

***

No aspect of pecuniary self interest or public interest was served by revealing Brett McKenzie's name as a victim or alleged victim of child sexual abuse by a priest.  The complained of acts of Defendant were done by Defendant solely for the purpose of causing harm to Plaintiff. (Complaint, ¶55) (Emphasis supplied.)

Thus, the correct inquiry before the Court is whether the Complaint amply pleads that Defendant acted with the sole intent to harm when Defendant named Brett McKenzie in the Article.  On this point, the Complaint pleads substantial allegations that evidence that Defendant's conduct was done with the sole intent to harm.

The Complaint provides three compelling facts that evidence Defendant's disinterested malevolence in naming Brett McKenzie in the Article Defendant; (1) the statement of the Article's, author Dorothy Rabinowitz, two days after publication; (2) the failure of Defendant to test the accuracy of its information from all potential sources and to engage in balanced reporting; and (3) Defendant's disregard for the widely accepted ethics in journalism regarding the identification of victims of sex crimes.

### 1.  Evidence of Disinterested Malevolence:  Dorothy Rabinowitz's Statement.

The most compelling evidence of Defendant's indifference to the harm caused to Brett McKenzie was the justification offered by Dorothy Rabinowitz for naming Brett McKenzie in the Article.  As stated in the Complaint:

18

[Two][11] days after publication of The Wall Street Journal's article
that is the subject of this action, The New Hampshire Union Leader, a
newspaper published and widely circulated in New Hampshire, wrote an
article about The Wall Street Journal's article. The New Hampshire Union
Leader article reported,

> Rabinowitz yesterday defended the Journal's
> naming of one of MacRae's accusers in the civil class-
> action lawsuit. 'I'll tell you why because the cloak of
> anonymity is the worst encouragement to a false abuse
> climate; that is the problem.

See, Complaint, ¶ 17. A copy of The New Hampshire Union Leader's article is annexed as

Exhibit C to the Mortner Declaration.

From the quote of Ms. Rabinowitz it is clear that Brett McKenzie's life meant absolutely

nothing to her. Wrecking his life meant nothing either. This is disinterested malevolence.


### 2. *Evidence of Disinterested Malevolence: Defendant's Failure to Engage in Balanced Reporting.*

Further evidence of Defendant's disinterested malevolence as to the harm it would cause

to Brett McKenzie is the fact that Defendant failed to engage in balanced reporting. If Defendant

named Brett McKenzie out of an intent to inform the public, than Defendant would have

performed its journalistic duty to get the story from both sides, but no such effort was made. As

stated in the Complaint:

> 25. The Wall Street Journal's article identified the Diocese of
> Manchester, and it identified attorneys involved in the priest sexual abuse
> cases in New Hampshire, which arose in the last decade.

---

[11] The Complaint erroneously states the New Hampshire Leader was four days after the Wall
Street Journal's article was published. In fact, it was only two days.

26. However, The Wall Street Journal's article in its opening paragraphs singled out one out of more than two hundred individuals who claimed to have been child victims of sexual abuse by priests of the Diocese of Manchester – that victim was Brett McKenzie.

27. Moreover, The Wall Street Journal's article identified only one source for the public character assassination of Brett McKenzie, Gordon MacRae, a convicted, pedophile priest who was serving a prison term of 33½ to 67 years.

28. In March of 2003, the New Hampshire Attorney General's Office issued a comprehensive report summarizing a year-long investigation of clergy sexual abuse cases involving the Diocese of Manchester. Those cases involved 40 priests. In that report Gordon MacRae was specifically identified by the New Hampshire Attorney General's Office as one of the "worst of the worst" among priests who had, over the years, sexually molested minors.

29. Nevertheless, The Wall Street Journal's article accepted MacRae's tale as uncontroverted. Neither Rabinowitz nor anyone else from The Wall Street Journal ever contacted the Diocese of Manchester, its attorney, Brett McKenzie, or his attorney to fact check MacRae's claim that he never met Brett McKenzie.

30. Neither Rabinowitz nor anyone else from The Wall Street Journal ever asked for comment from the Diocese of Manchester, its attorney, Brett McKenzie, or his attorney on MacRae's claim that he never met Brett McKenzie.

31. Had Defendant undertaken any of the aforementioned basic investigative steps regarding MacRae's statement, it would have found that in 1983, a 12 year-old Brett McKenzie was a student at the Sacred Heart School in the Parish of Our Lady of Miraculous Medals in Hampton, N.H., where, at that time Gordon MacRae was a young priest, and a teacher of Brett McKenzie's.

32. Had Defendant undertaken any of the aforementioned basic investigative steps, it would have been told that there was significant evidence that MacRae sexually abused Brett McKenzie, that Brett McKenzie's claims were meritorious, that MacRae had consistently denied any and all of the many allegations of sexual abuse against him

20

spanning decades, and that MacRae's claim of innocence in connection
with Brett McKenzie's claim was utterly without merit.

Thus, Defendant's conduct was not in accord with the fundamental journalistic principle
of balanced reporting.  Rather, Defendant's total reliance on Gordon MacRae to support its
decision to name Brett McKenzie in the Article; and Defendant's failure to seek comment from
either Brett McKenzie, the Diocese of Manchester or their attorneys, further evidences Plaintiff's
claim that Defendant acted with disinterested malevolence as to the harm it would cause to Brett
McKenzie.

### 3.  *Evidence of Disinterested Malevolence:  Defendant's Disregard For Journalism Ethics*

Finally, Defendant's disinterested malevolence to the harm it caused to Brett McKenzie
is evidenced by Defendant's violation of four rules of the Code of Ethics that guides the
profession of journalism.  As the Complaint states,

> 51.    In publishing Brett McKenzie's name in connection with
> being a victim of priest sexual abuse, Defendant acted with intent and in a
> grossly irresponsible manner.  Moreover, Defendant acted with intent and
> without due consideration for the ethical principles and standards as
> regards the publication of the names of victims of crimes and of victims
> sexual abuse that are ordinarily followed by responsible members of the
> news media and parties engaged in information gathering and
> dissemination.

> 52.    Defendant knew the harmfulness of its confidential
> disclosures, to wit that Brett McKenzie was a child victim of a priest's
> sexual abuse; and with actual malice, Defendant intentionally published
> the story.

> 53.    Upon information and belief, at the time of the aforesaid
> publication, Defendant was motivated by actual malice in that Defendant
> knew that the article and matters contained therein concerning the Plaintiff

21

so published, were confidential and highly sensitive – combining such profound issues as sexual abuse and religion -- and were published with reckless and wanton disregard of the ethical standards that prevail in the news media regarding the identification of victims of crimes and sexual abuse.

In reporting Brett McKenzie's name, Defendant violated four of the ethical principles stated in the Code of Ethics of the Society of Professional Journalists.[12]  Defendant failed to:

1)  Show compassion for those who may be affected adversely by news coverage.

2)  Recognize that gathering and reporting information may cause harm or discomfort. Pursuit of the news is not a license for arrogance.

3)  Recognize that private people have a greater right to control information about themselves than do public officials and others who seek power, influence or attention. Only an overriding public need can justify intrusion into anyone's privacy.

4)  Be cautious about identifying juvenile suspects or victims of sex crimes.

A copy of the Code of Ethics of the Society of Professional Journalists is annexed as Exhibit E to the Mortner Declaration.[13]

### 4. Defendant Had No Valid Reason to Name Brett McKenzie in the Article.

Dorothy Rabinowitz and the Wall Street Journal had no valid reason to publicly name Brett McKenzie as one of Gordon MacRae's alleged victims, and every reason not to.

---

[12] The Society of Professional Journalists, founded in 1909, is a national journalism organization "dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior."  The Society has nearly 300 chapters across the United States, and its membership base is more than 9,000 members of the media.

[13] Plaintiff relied upon the Code of Ethics of the Society of Professional Journalists in framing the Complaint herein.  See the Mortner Declaration at ¶¶11, 12 and 13.  Therefore, in connection with the instant 12(b)(6) motion, Plaintiff respectfully requests that the Court consider this document, in accordance with *Cortec Indus., Inc., supra,* 949 F.2d at 47-48.

Defendant's conduct exhibits disinterested malevolence to Plaintiff, because from the Article's point of view nothing was gained by naming Brett McKenzie, as one out of more than two hundred anonymous claimants of sexual abuse against the Diocese of Manchester.  The Article would have had the same effect if a "John Doe" were used for Brett McKenzie's name.  Indeed, the Report issued by New Hampshire's Office of the Attorney General concerning the priest sexual abuse cases, used "John Does" to identify victims.  See Exhibit B to the Mortner Declaration.

Defendant named Brett McKenzie solely because of the ire of Ms. Rabinowitz and the Wall Street Journal toward people like him, people who would use "the cloak of anonymity." From Defendant's perspective Brett McKenzie got what he deserved.  Never mind what the court and lawyers in New Hampshire had to say about the use of confidential settlements, or for that matter, the Diocese or even the victim, Brett McKenzie.  The answer is, Brett McKenzie was named because Ms. Rabinowitz and the Wall Street Journal decided no confidentiality for Brett McKenzie.

In exposing Brett McKenzie it didn't matter to Defendant that neither Brett McKenzie, his lawyer nor the Diocese of Manchester were given a voice in the Article's account of events, and that only Gordon MacRae was heard.  In exposing Brett McKenzie it didn't matter to Defendant that the U.S. Conference of Bishops specifically approved the confidentiality language in the settlement agreement between Brett McKenzie and the Diocese of Manchester for "grave and substantial reasons," and that the U.S. Conference of Bishops and the Diocese of Manchester intended the use of confidentiality for the purpose of avoiding "the emotional harm that would result from such disclosure" of the identity of clergy abuse victims.  (*See* the Complaint, ¶43, and Exhibit A to the Mortner Declaration.)  In exposing Brett McKenzie it

didn't matter to Defendant that Brett McKenzie might actually have suffered as one of Gordon MacRae's child victims of sexual abuse, and that McKenzie would likely be hurt again by the publication of his name in the Article.

Precisely for such cases have the Courts, ever since Mr. Justice Holmes, upheld and applied the doctrine of prima facie tort.

In *KSL Recreation Com. v. Boca Raton Hotel and Club Ltd. Partnership*, 168 Misc.2d 18, 25, 637 N.Y.S.2d 261, 265 (Sup. Ct. NY Co. 1995), the Court determined that whether the defendant was solely motivated by malice was a contested question of fact that could not be resolved on a motion to dismiss at the pleading stage.

Here the rule of law applied in *KSL Recreation Corp* should control, since Defendant's purported motive to inform the public has been vigorously contested by the factual averments in the Complaint.

Based on the foregoing the Complaint should not be dismissed for failure to plead

### b. <u>Complaint Amply Pleads Special Damages.</u>

Defendant argues that the Complaint fails to plead special damages because (i) "Plaintiff seeks the round-figure of $7,700,000 in damages as against Dow Jones, which is clearly insufficient to allege special damages;" and (ii) "allegations that the Plaintiff "suffered 'severe physical and mental anguish which has required medical and psychological treatment" are too "generalized ... [and] cannot serve as pleadings of special damages."  (See Defendant's Memorandum, p. 10).  Defendant's arguments are totally without merit.

First, Plaintiff has not pled special damages with a "round-figure."  The demand in the Complaint for $7,700,000 is clearly identified as a demand for ***exemplary and punitive damages***

– not special damages.  Special damages are pled elsewhere.  As the Complaint states,

> 69.    By reason of the foregoing, the aggravated, malicious and vile nature of Defendant's wrongful act and to prevent repetition, by serving as a warning to others, particularly in the media, and to protect the public, and because Plaintiff has been subjected by Defendant to insult, injury and indignity, Plaintiff is entitled to an award of exemplary and punitive damages in the amount of $7,700,000, an amount that is sufficient to deter Defendant Dow Jones & Company, Inc., and others, from such conduct in the future.

Second, Defendant's contention that New York does not recognize psychological injury as special damages is utterly wrong.  As support for this incorrect proposition Defendant relies on a libel case, *Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868, 875 (S.D.N.Y. 1984).  However, Judge Sofaer's decision in *Mullenmeister* did not purport to abolish psychological injury as a form of special damages.  The Court stated,

> Mullenmeister alleges that as a result of the alleged defamation he has lost "substantial sales" in the territory assigned him and suffered "severe physical and mental anguish which has required medical and psychological treatment." Complaint ¶¶ 20-21. These generalized allegations cannot serve as pleadings of special damages. See, e.g., *Korry v. International Telephone & Telegraph Corp.*, 444 F.Supp. 193, 197 (S.D.N.Y.1978). For example, "if the special damage was a loss of customers ... the persons who ceased to be customers, or who refused to purchase, must be named." (Citations omitted.) *Id.*, at 875.

The purpose of special damages in a pleading of prima facie tort, as in other torts, is to identify and causally relate the actual losses to the allegedly tortious acts. *Montefusco v. Nassau County*, *supra* 39 F.Supp.2d 231 (E.D.N.Y. 1999).

In fact, Court's in New York have recognized psychological injury as special damages in cases similar to the instant action involving wrongful disclosures.  In *Tighe v. Ginsberg*, 146 A.D.2d 268, 540 N.Y.S.2d 99 (4th Dept. 1989) a patient brought a negligence claim against a

25

physician for the physicians' unauthorized disclosure of the patient's medical records.  The Appellate Division held "there is no merit to Defendants' claim, raised for the first time on appeal, that Plaintiff's complaint should be dismissed because it seeks recovery only for psychological and emotional damage but not for physical harm…"

Similarly, in *Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638 (1975), a state hospital negligently misinformed the daughter of a patient that her mother had died and there were objective physical manifestations indicating that the daughter suffered emotional harm from this misinformation.  The Court of Appeals held that the daughter could recover for emotional harm.

Here, Plaintiff has also alleged objective psychological and physical manifestations indicating the causal connection between the emotional harm he has suffered and the Defendant's wrongful publication of Plaintiff's confidential claim of sexual abuse against the Diocese of Manchester and more specifically Gordon MacRae.

In paragraphs 59 through 68, the Complaint provides a detailed explanation of the connection between the emotional disorders that Plaintiff suffers from and the complained of conduct of Defendant.

Moreover, in opposition to Defendant's motion, and as further support of the Complaint's allegation that Plaintiff has suffered special damages, Plaintiff proffers the actual medical records which were used in framing the Complaint.  *Cortec Indus., Inc. supra,* 949 F.2d at 47-48. Accordingly, Plaintiff refers the Court to Plaintiff's medical records annexed as Exhibit D to the Mortner Declaration.  These medical records leave no doubt that in the time since the publication of the Article Plaintiff has suffered emotional harm.

Based on the foregoing, Plaintiff has amply pled special damages in his claim of prima facie tort.

**CONCLUSION**

For all the reasons set forth above Plaintiff Brett McKenzie respectfully request that the

Court deny Defendant's motion to dismiss, and requests such other and further relief as to this

Court may seem just, proper and equitable.

Dated: June 8, 2008
      New York, NY

                                     Respectfully submitted,

                                           /s/
                                    Richard M. Mortner (RM-0019)
                                    40 Broad Street, 5th Floor
                                    New York, NY 10004
                                    Tel. 212-480-2181

                                    Attorney for Plaintiff Brett McKenzie