**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

**BRETT MCKENZIE,**

               **Plaintiff,**

    **- against -**

**DOW JONES & COMPANY, INC.,**

               **Defendant.**
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/22/08

**OPINION AND ORDER**

**08 Civ. 3623 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In 1983, Gordon MacRae, a Roman Catholic Priest, allegedly sexually abused plaintiff Brett McKenzie. In April 2005, the Wall Street Journal ("the Journal"), a newspaper owned by defendant Dow Jones, published an opinion piece identifying McKenzie as an alleged victim of past sexual abuse and indicating that McKenzie had brought a lawsuit against the Diocese of Manchester, New Hampshire. In response, McKenzie has brought a claim of prima facie tort against Dow Jones, seeking damages for the Journal having "outed" him and allegedly inferring that McKenzie's claim of past sexual abuse was fraudulent. Dow Jones moves to dismiss the action as time-barred and for failing to adequately plead the elements of prima facie tort. For the reasons stated

below, Dow Jones' motion is granted.

## II.    BACKGROUND[1]

In 1983, a Roman Catholic priest sexually molested Brett McKenzie, a twelve year-old student at the Sacred Heart School in the Parish of Our Lady of Miraculous Medals in Hampton, New Hampshire.[2]  At the time, Gordon MacRae was a young priest and McKenzie's teacher at the Sacred Heart School.[3]

In 2003, McKenzie joined a class action against the Roman Catholic Diocese of Manchester, New Hampshire ("the Diocese").  The Diocese settled McKenzie's claim for $20,000.[4] As part of the settlement, the Diocese agreed to enter into a confidentiality agreement with McKenzie, thereby allowing him to control disclosure of his past sexual abuse.[5]  The settlement agreement employed language approved by the U.S. Conference of Bishops for use in clergy abuse settlements.[6]  According to the U.S. Conference of Bishops, the intended purpose

---

[1]    The facts in this section are taken from the Complaint ("Compl.") and are assumed to be true for the purposes of this motion.

[2]    *See* Compl. ¶¶ 2, 31.

[3]    *See id.* ¶ 31.

[4]    *See id.* ¶ 3.

[5]    *See id.* ¶ 42.

[6]    *See id.* ¶ 43.

2

of the confidentiality language is to avoid "the emotional harm that would result

from disclosure" of the identity of clergy abuse victims.[7]

On April 27, 2005, the Journal, an internationally circulated

newspaper, published an article ("the Article") written by Dorothy Rabinowitz in

the opinion section.[8]  In identifying McKenzie as an individual who had claimed

to be sexually abused by a priest, the Article stated:

> Nine years after he had been convicted and sent to
> prison on charges of sexual assault against a teenaged boy,
> Father Gordon MacRae received a letter in July 2003 from
> Nixon Peabody LLP, a law firm representing the Diocese
> of Manchester, N.H.  Under the circumstances – he was a
> priest serving a life term – and after all he had seen, the
> cordial-sounding inquiry should not perhaps have chilled
> him as much as it did.
>
> ". . . an individual named Brett McKenzie has
> brought a claim against the Diocese of Manchester seeking
> a financial settlement as a result of alleged conduct by
> you," the letter informed him. There was a limited window
> of opportunity for an agreement that would release him and
> the Diocese from liability.  He should understand, the
> lawyer added, that this request didn't require Fr. MacRae
> to acknowledge in any way what Mr. McKenzie had
> alleged. "Rather, I simply need to know whether you
> would object to a settlement agreement."
>
> Fr. MacRae promptly fired a letter off, through his

---

[7]  *Id.*

[8]  *See id.* ¶ 4.

lawyer, declaring he had no idea who Mr. McKenzie was, had never met him, and he was confounded by the request that he assent to any such payment. Neither he nor his lawyers ever received any response. Fr. MacRae had little doubt that the stranger – like others who had emerged, long after trial, with allegations and attorneys, and, frequently, just-recovered memories of abuse – got his settlement.[9]

Prior to the Journal's publication of the Article, McKenzie had kept the past sexual abuse a secret.[10] Not only did McKenzie want to avoid embarrassment, humiliation, pity, contempt, and ridicule from friends and coworkers, he also sought to prevent his parents from feeling as though they had failed to protect their child.[11] After the Journal published the Article, McKenzie was forced to explain to family, friends, and co-workers that he had been the victim of sexual abuse.[12]

The Article, and its implication that he fabricated a claim of sexual abuse, has caused McKenzie severe mental pain and anguish,[13] which has led to anxiety related disorders. Being "outed" made McKenzie sick, nervous, unable to

---

[9]    Dorothy Rabinowitz, *A Priest's Story*, The Wall Street Journal, Apr. 27, 2005, Ex. 1 to Compl.

[10]    *See* Compl. ¶ 41.

[11]    *See id.*

[12]    *See id.* ¶ 46.

[13]    *See id.* ¶¶ 59-60.

4

properly eat and digest his food, lose weight, become despondent and suffer from vomiting, insomnia, and depression.[14]   Although McKenzie has seen doctors and taken medication in an effort to restore his physical and mental health, McKenzie continues to suffer from many of these ailments.[15]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[16] and "draw all inferences in the light most favorable to the non-moving party."[17]   Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[18]

In deciding a motion to dismiss, the court is not limited to the face of

---

[14]   *See id.* ¶ 62.

[15]   *See id.* ¶¶ 65, 68.

[16]   *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007) (quotation marks omitted).   *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

[17]   *In re NYSE Specialists*, 503 F.3d at 95.

[18]   *Id.* (quotation marks omitted).

the complaint, but "may [also] consider any written instrument attached to the

complaint, statements or documents incorporated into the complaint by reference .

. . and documents possessed by or known to the plaintiff and upon which it relied

in bringing the suit."[19]  However, "before materials outside the record may become

the basis for a dismissal . . . it must be clear on the record that no dispute exists

regarding the authenticity or accuracy of the document."[20]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and

plain statement of the claim showing that the pleader is entitled to relief.'"[21]  To

survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet

the standard of "plausibility."[22]  Although the complaint need not provide

"detailed factual allegations,"[23] it must "amplify a claim with some factual

allegations . . . to render the claim *plausible*."[24]  The standard is no longer that a

---

[19]    *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[20]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[21]    *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[22]    *See Bell Atl.*, 127 S. Ct. at 1970.

[23]    *Id.* at 1964.  *Accord ATSI*, 493 F.3d at 98 n.2.

[24]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

complaint can be dismissed only if there us "'no set of facts'" that plaintiff could

prove "'which would entitle him to relief.'"[25]   Rather, the complaint must provide

"'the grounds upon which [the plaintiff's] claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'"[26]

## B.   Prima Facie Tort

The elements of a cause of action for prima facie tort under New

York law are: "'(1) the intentional infliction of harm, (2) which results in special

damages,[27] (3) without any excuse or justification, (4) by an act or series of acts

---

[25]     *Bell Atl.*, 127 S. Ct. at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41,
45-46 (1957)).  *Accord id.* at 1969 ("The phrase is best forgotten as an incomplete,
negative gloss on an accepted pleading standard").

[26]     *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

[27]     "Special damages" is defined as a "'specific and measurable loss.'"
*Langhorne v. Port Auth. of New York and New Jersey*, No. 03 Civ. 4610, 2005 WL
3018265, at *5 (S.D.N.Y. Nov. 10, 2005) (quoting *Freihofer v. Hearst Corp.*, 65
N.Y.2d 135, 143 (1985)).  "'Special damages must be alleged with sufficient
particularity to identify *actual losses* and be related causally to the alleged tortious
acts . . . . They must be fully and accurately stated.'" *D'Angelo-Fenton v. Town of
Carmel*, 470 F. Supp. 2d 387, 401 (S.D.N.Y. 2007) (quoting *Lincoln v. First Bank
of Rochester v. Siegel*, 60 A.D.2d 270, 280 (4th Dep't 1977)).  Broad and
conclusory terms, as well as a "'demand for a round sum,'" are insufficient to
fulfill this element of a prima facie tort. *Langhorne*, 2005 WL 3018265, at *5
(quoting *Clifford v. Guilderland Lodge, No. 2480*, 681 N.Y.S.2d 194, 199 (Sup.
Ct. N.Y. Co. 1998)).

which would otherwise be lawful[.]'"[28]  In addition, the complaint must allege that

defendants were motivated solely by the malicious intention to injure the

plaintiff.[29]

     Courts stress that prima facie tort is not a "catch all alternative for

every cause of action which cannot stand on its own legs."[30]  Thus, "'[w]here

relief may be afforded under traditional tort concepts, prima facie tort may not be

invoked as a basis to sustain a pleading which otherwise fails to state a cause of

action in a conventional tort.'"[31]

---

[28]   *Langhorne*, 2005 WL 3018265, at \*5 (quoting *Freihofer*, 65 N.Y.2d at 142-43).

[29]   *See Rodgers v. Grow-Kiewit Corp.*, 535 F. Supp. 814, 816 (S.D.N.Y.), *aff'd*, 714 F.2d 116 (2d Cir. 1992).  The plaintiff must establish that the only motivation for the behavior of the defendant was "distinterested malevolence." *Langhorne*, 2005 WL 3018265, at \*5 (quoting *Ruderman v. Stern*, No. 39179/97, 2004 WL 3153217, at \*16 (Sup. Ct. N.Y. Co. Oct. 25, 2004)). *Accord Gay v. Carlson*, No. 89 Civ. 4757, 1992 WL 309819, at \*10 (S.D.N.Y. Oct. 15, 1992) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990)) ("In order to state a claim for prima facie tort under New York law, a plaintiff must allege that defendants were 'motivated solely by malicious motives.'").  Thus, "'the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.'" *Langhorne*, 2005 WL 3018265, at \*5 (quoting *Ruderman*, 2004 WL 3153217, at \*16).

[30]   *Gilani v. National Ass'n of Sec. Dealers, Inc.*, No. 96 Civ. 8070, 1997 WL 473383, at \*16 (S.D.N.Y. Aug. 19, 1997) (citation omitted).

[31]   *Hughes v. Patrolmen's Benevolent Ass'n of City of New York*, 850 F.2d 876, 882 (2d Cir. 1988) (quoting *Freihofer*, 65 N.Y.2d at 143). "A *prima*

8

In New York, the statute of limitations for prima facie tort is three

years.[32]  Conversely, New York applies a one-year statute of limitations to

intentional torts.[33]  However, the New York Court of Appeals has held that the

one-year statute of limitations applicable to the intentional torts specified in

section 215(3) of New York's Civil Practice Law and Rules ("CPLR section

215(3)") applies to other causes of action which allege that defendant intentionally

caused injury to plaintiff's reputation.[34]  For example, "a plaintiff cannot

_____

*facie* tort . . . exists only where no traditional tort is appropriate; once a traditional tort is established, the harm complained of is used to support that charge, and the *prima facie* tort claim disappears." *Cuillo v. Shupnick*, 815 F. Supp. 133, 135 (S.D.N.Y. 1993) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984)).

[32]     *See Montefusco v. Nassau County*, 39 F. Supp. 2d 231, 238 (E.D.N.Y. 1999) (citing *Bassim v. Hassett*, 184 A.D.2d 908, 909 (3d Dep't 1992)).

[33]     *See* N.Y. C.P.L.R. § 215(3) (McKinney 2006) ("[A]n action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law" is subject to a one year statute of limitations.).

[34]     *See Gay*, 1992 WL 309819, at * 2 (citing *Morrison v. National Broad. Co.*, 280 N.Y.S.2d 641, 644-45 (1967)).  *See also Aequitron Med., Inc. v. CBS, Inc.*, No. 93 Civ. 950, 1994 WL 30414, at *8 (S.D.N.Y.  Feb. 2, 1994). However, where "economic loss is sought rather than damages for reputational injury, [prima facie tort is] governed by the three year limitations period set forth in section 214 of the Civil Practice Laws and Rules ("CPLR")." *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 75-76 (S.D.N.Y. 1995).  Additionally, the operative distinction between the causes of action governed by CPLR § 215, and those within the ambit of CPLR § 214, is whether the particular claim involved is for an intentional tort, or a tort sounding in negligence. *See Cuillo*, 815 F. Supp.

circumvent New York's one year statute of limitations for defamation by labeling

a claim one for . . . prima facie tort . . . 'if, in fact, the claim seeks redress for

injury to reputation.'"[35]  Thus, where, a plaintiff alleges prima facie tort "in order

to overcome the strictures of a less favorable statute of limitations, courts do not

hesitate to dismiss" the claim.[36]

## IV.    DISCUSSION

### A.    New York Law Applies to This Action

Dow Jones argues that New York law applies to this case.[37]

McKenzie does not directly address the issue of what law should apply.  Both

McKenzie and Dow Jones cite exclusively to New York State cases and cases

within the Second Circuit that apply New York law in addressing substantive legal

issues.  Because "'implied consent . . . is sufficient to establish choice of law,'"[38] I

---

at 136 (citation omitted).

[35]    *Aequitron*, 1994 WL 30414, at *8 (quoting *Entertainment Partners Group, Inc. v. Davis*, 603 N.Y.S.2d 439, 440 (1st Dep't 1993)).

[36]    *Montefusco*, 39 F. Supp. 2d at 238.

[37]    *See* Memorandum in Support of Defendant's Motion to Dismiss at 3-4.

[38]    *See Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Environmental Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

apply New York law.

**B.    Statute of Limitations**

Dow Jones argues that the one-year statute of limitations governing intentional torts set forth in CPLR section 215(3) applies to the instant case.  Dow Jones notes that, throughout the Complaint, McKenzie asserts that by publishing his name in the Article, Dow Jones acted deliberately and with the intent to cause him harm.  Dow Jones argues that McKenzie's prima facie tort claim is fundamentally an intentional tort alleging reputational injury and is therefore subject to a one-year statute of limitations.  Dow Jones maintains that, because McKenzie brought this action nearly three years after it published the Article, the action is time-barred.

McKenzie argues that the Court's inquiry should not focus on whether, at its root, the Complaint alleges an intentional tort, but whether the Complaint properly pleads a prima facie tort.  According to McKenzie, if the Court finds that (1) he has pled all of the elements of a prima facie tort, and (2) that a traditional tort could not have been pled in the alternative, then the three-year statute of limitations is applicable, and his action is timely.

McKenzie's prima facie tort claim is based on Dow Jones' intentional conduct resulting in injury to his reputation.  McKenzie asserts that Dow Jones

11

intentionally exposed his past victimization "solely for the purpose of causing harm to [McKenzie]."[39]  The allegations in the Complaint demonstrate that the injury he allegedly suffered is reputational.  McKenzie blames the "public character assassination"[40] perpetrated by Dow Jones for the resulting exposure to "embarrassment, humiliation, disgrace, contempt and ridicule."[41]  He also blames the Article for "irreparably injur[ing] . . . his good name[] and social standing," and for the loss of the esteem and respect he once enjoyed from his friends, acquaintances, coworkers, and family members.[42]  As a result of this reputational harm, McKenzie suffered anxiety-related disorders that were then magnified by McKenzie's "sudden public infamy."[43]

The factual allegations in the Complaint indicate that his prima facie tort claim is no more than a thinly-veiled defamation claim.  McKenzie asserts that he brought a claim for prima facie tort because the facts of the case did not allow him to plead a traditional tort of defamation.  Noting that truth is a complete

---

[39]    Compl. ¶ 37.

[40]    *Id.* ¶ 27.

[41]    *Id.* ¶ 48.

[42]    *Id.* ¶ 58.

[43]    *Id.* ¶ 63.

defense to a defamation claim, McKenzie points out that he does not allege that the statements in the Article are false. McKenzie argues that because he does not dispute the truthfulness of the Article's content, he cannot avail himself of traditional tort remedies.

The Article's factual statements, however, are not at the heart of McKenzie's claim. Rather, McKenzie takes issue with the allegedly false impression created by the Article that his claim of sexual abuse by a priest was a fraud perpetrated to extract money. According to McKenzie, the article "gave rise to false suggestions, impressions and implications,"[44] conveying to the community that he is "dishonest, disreputable, deceptive and had wrongfully accused a priest for his own financial gain."[45] McKenzie contends that these false implications are "reasonably susceptible of a *defamatory* connotation"[46] and were known by Dow Jones to be false when the Article was published.[47]

The Second Circuit has stated that "[i]n determining the appropriate statute of limitation, the New York courts 'look for the reality, and the essence of

---

[44]     *Id.* ¶ 20.

[45]     *Id.* ¶ 22.

[46]     *Id.* ¶ 21 (emphasis added).

[47]     *See id.* ¶ 24.

13

the action and not its mere name.'"[48]  Following the Second Circuit's directive, it

is apparent that McKenzie's action sounds in defamation actions.  Accordingly,

McKenzie's claim is governed by the one-year statute of limitation that applies to

defamation.  Because McKenzie initiated this action nearly three years after Dow

Jones' publication of the Article, his claim, though styled as a prima facie tort to

avoid a one-year statute of limitation, is time-barred.[49]

### C.    Prima Facie Tort

Even if McKenzie had filed this action in a timely manner, Dow

Jones' motion to dismiss his claim for prima facie tort would still be granted.

Assuming that McKenzie has adequately pled the other elements of a prima facie

tort, he has failed to allege special damages with particularity, as is required under

New York law.  McKenzie merely states that he "is entitled to an award of

exemplary and punitive damages in the amount of $7,700,000, an amount that is

sufficient to deter . . . Dow Jones . . . and others[] from such conduct in the

---

[48]    *Okure v. Owens*, 816 F.2d 45, 50 (2d Cir. 1987) (quoting *Morrison*, 19 N.Y.2d at 459).

[49]    *See Ding v. Bendo*, No. 03 CV 1237, 2006 WL 752824, at *7 (E.D.N.Y. Mar. 23, 2006) (quoting *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (1st Dep't 2002)) ("Where 'a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, plaintiff cannot enjoy a Statute of Limitations bar by labeling the action as one to recover damages for a prima facie tort.'").

14

future."[50]  However, a damage allegation consisting "entirely of round figures and lump sums, without any explanation of how plaintiff arrived at such figures"[51] is insufficient to satisfy the second element of a prima facie tort under New York law.[52]

## V.    CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted because McKenzie's claim is time-barred and, alternatively, because he failed to allege special damages with particularity.  Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires," though

---

[50]     Compl. ¶ 69.

[51]     *Solar Travel Corp. v. Nachtomi*, No. 00 Civ. 3564, 2001 WL 641151, at *9 (S.D.N.Y.  June 8, 2001) (finding plaintiff's alleged damages of five million dollars towards loss of profits, $500,000 towards loss of good will, $30,000 towards margin money, and five million dollars towards lost business opportunities constituted an insufficient allegation of special damages).

[52]     *See, e.g., Hill v. City of New York*, No. 05 Civ. 9473, 2006 WL 2347739, at *6 (S.D.N.Y. Aug. 14, 2006) (finding plaintiff's request for one million dollars in damages for prima facie tort, and an additional one million dollars in punitive damages to be rounded estimates that did not meet the specificity standard); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2320544, at *15 (S.D.N.Y. Aug. 10, 2006) (finding "plaintiff's round sum of 'no less than $500,000,' without any attempt at itemization," insufficient to allege special damages); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002) (finding that plaintiff's reference to "'having to purchase facilities for his buildings and equipment off-site and to pay extensive legal fees . . . and filing fees'" is not the type of itemization required under New York law to state a claim for prima facie tort).

whether to permit a plaintiff to amend its pleadings is a matter committed to the

Court's "sound discretion."[53] While "[i]t is the usual practice upon granting a

motion to dismiss to allow leave to replead,"[54] such leave should be denied where

the proposed amendment would be futile, if there is undue delay, bad faith, or

dilatory motive, or where the opposing party would suffer undue prejudice.[55]

Here, leave to replead is denied, as McKenzie's claim is barred by the statute of

limitation no matter how the claim is pleaded.[56] The Clerk of the Court is directed

to close this motion (document no. 7 on the docket sheet) and this case.

---

[53]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[54]    *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

[55]    *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

[56]    Granting McKenzie leave to replead a prima facie tort would be futile. The essence of McKenzie's claim is the reputational injury he suffered as a result of the allegedly false impression created by the Article that McKenzie perpetrated a fraud to extract money from the Diocese. McKenzie's claim is inherently one of defamation and is therefore barred by the one-year statute of limitations applicable to intentional torts. *See Morrison*, 280 N.Y.S.2d at 644 ("The harm assertedly sustained by the plaintiff – injury to his reputation – is precisely the same as that caused by defamation . . . . In the case before us, the plaintiff complains, in effect, that the defendants' conduct brought an idea that he was dishonest to the perception of the general public. It follows, therefore, that his cuase of action must be deemed to fall within the ambit of tortious injury which sounds in defamation.") (internal quotation marks omitted).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           July 22, 2008

## - Appearances -

**Plaintiff:**

Richard M. Mortner, Esq.
40 Broad Street, 5th Floor
New York, NY 10004
(212) 354-5323

**For Defendant:**

Slade R. Metcalf, Esq.
Hogan & Hartson, LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000